IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

vs. Cr. No. 25-20419-TLP

COBY JACKSON,

Defendant.

MOTION TO SUPPRESS

Comes the defendant, Coby Jackson, through counsel, Mary C. Jermann-Robinson, and respectfully moves this Court to suppress all physical evidence as well as his statements, obtained as a result of an unlawful search of his hotel room in violation of the Fourth Amendment to the Constitution, and says:

**I. INTRODUCTION**

The following factual narrative is based on the discovery provided by the government, including written reports, and body worn camera (BWC) video, in addition to Mr. Jackson's recollection of the event. Law enforcement officers sought to serve a bench warrant on Mr. Jackson at 2745 Airways Boulevard, in Memphis, Tennessee. Through a conversation with hotel management, they determined that Mr. Jackson was in room 262 of the Budget Host Inn and Suites. Several officers secured the area around the hotel room, some Federal Agents, some Memphis Police Department Officers. No one announced anything about serving an arrest warrant but instead one identified himself as a U.S. Marshal, and began kicking the door, demanding that *Timothy* Jackson come to the door. His demands included that Mr. Jackson (later corrected to Coby

Jackson) open the door, that they would breach the door and that they had a K-9 present (loud barking could be heard in the video footage), and that if he did not come out, he would get "bit". Mr. Coby Jackson did come to the door and was immediately arrested outside of the room. Note that the arrest itself was obscured by what appears to be a hand or other object blocking the lens of a BWC. Only one video was provided in discovery, although there were officers from various agencies present.[1] At least three of the officers were seen entering the room immediately after Mr. Jackson was cuffed outside of the room. Officers claim that they entered the room to get clothing for Mr. Jackson. However, no attempt to locate clothing is documented by the BWC footage. Two officers immediately flipped the mattress of one of the beds. Other officers appeared to be searching other parts of the room closer to the television. No sweep was executed. Officers did recover some marijuana, a small amount of what appeared to be cocaine, and a firearm. At some point they spoke with Mr. Jackson concerning what they had found. Allegedly he admitted that he was a felon and the powder was cocaine.

## III. ARGUMENT

### A. An arrest warrant is not a search warrant and does not automatically permit officers to search a residence.

There will be no dispute that the law enforcement officers' purpose on the date of the event was to serve a bench warrant on Mr. Jackson, and that they did not have a search warrant. The Fourth Amendment provides that the right of the people to be secure in their "persons" and "houses" against "unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. The

---

[1] The Defense will provide a copy of the video discussed in this filing. Also counsel has made an additional discovery request for all BWC associated with this case.

Supreme Court has interpreted this language to mean that, absent exigent circumstances, police officers may not enter a person's residence to affect a warrantless search. See Payton v. New York, 445 U.S. 573, 589-90 (1980); see also United States v. Morgan, 743 F.2d 1158, 1161 (6th Cir. 1984). A hotel room is entitled to the same Fourth Amendment protection as a private residence. Stoner v. California, 376 U.S. 483 (1964). That makes a warrantless search of a hotel room unreasonable unless it falls within an exception to the warrant requirement. See United States v. Caldwell, 518 F.3d 426, 429 (6th Cir. 2008). See also United States v. Cooper, 24 F.4th 1086 (6th Cir. 2022).

**B. No exception to the search warrant requirement existed at the time of law enforcement's search of the hotel room.**

There should be no dispute that Mr. Jackson exited the room and was immediately arrested outside of the room. A viewing of the provided BWC video shows no exigent circumstances that would permit an otherwise warrantless search of that room. Exigent circumstances may justify a warrantless entry only where there is a compelling need for official action and no time to secure a warrant. Michigan v. Tyler, 436 U.S. 499, 509-10 (1979). In this case, Defendant had already been detained outside the room. The nature of the arrest warrant itself was not exigent. Mr. Jackson had missed a general sessions court date There was no risk of flight, no immediate threat to officer safety, and no risk of destruction of evidence that could justify a search. Further, there is no evidence that officers could see contraband in the room prior to crossing the entryway and performing a search.

Mr. Jackson predicts the government may attempt to justify the entry and search as a protective sweep under Maryland v. Buie, 494 U.S. 325 (1990). The same video discussed above does not support the need for a protective sweep. Such sweeps are limited to situations where

officers possess specific and articulable facts suggesting that a dangerous individual is inside. Id. The purpose of such a protective sweep is to protect the safety of the officer who remains at the scene, and for that reason, the sweep must be limited to a cursory search of the premises for the purpose of finding people hidden there who would threaten the officer's safety. United States v. Taylor, 248 F.3d 506, 513–14 (6th Cir. 2001). Here, the officers had already secured Mr. Jackson outside the room and lacked any specific, articulable basis to believe that another dangerous person was inside. Frankly, the video shows that the officers did not even attempt to disguise their behavior as a protective sweep. The video clearly shows officers moving directly to flip a mattress in the room, while others are shown to be looking at an area near the television, and not even looking in the bathroom or a closet where another person might have hidden.

Officers claim that they needed to enter the room to get clothing for Mr. Jackson, implying that perhaps he consented to such a search. Again, the BWC footage and audio provide no basis to claim consent. Mr. Jackson came to the door of his hotel room at the bidding of the Deputy U.S. Marshal. He was taken into custody outside of the room. Immediately after, the officers entered the hotel room with a K-9. Clearly, they intended to search no matter what and had the man and dog power to do it.

The search cannot be justified as incident to arrest. It does appear that the officers were serving a bench warrant. This warrant was not initially provided in discovery, but even assuming a valid arrest warrant, a search incident to arrest is limited to the area within the immediate control of the arrestee. Chimel v. California, 395 U.S. 752 (1969). Because Defendant was arrested outside the hotel room, nothing in the room was within Defendant's immediate control. Officers were in no danger. Accordingly, the search cannot be justified under this doctrine.

**C. Any statements from Mr. Jackson should be suppressed.**

In anticipation of the government agents claiming they received consent to enter and search, Mr. Jackson objects to this characterization. "[A] search based on consent requires more than mere expression of approval to the search." United States v. Canipe, 569 F.3d 597, 603 (6th Cir. 2009) (citation omitted). Factors such as drawn guns, numerous officers and police vehicles on the scene with flashing lights, the suspect reasonably believing that he was not free to leave the scene, and a belief that the search would occur regardless of consent suggest involuntariness. See e.g., United States v. Buckingham, 433 F.3d 508, 514 (6th Cir. 2006). Further, the court must also examine the statement granting consent to establish that it "was an unequivocal statement of free and voluntary consent, not merely a response conveying an expression of futility in resistance to authority or acquiescing in the officers' request." Id. The "unequivocal" requirement of consent should be viewed in conjunction with the fact that "a search based on consent requires more than just a mere expression of approval to the search . . . , [and it] must be free and voluntary." United States v. Jones, 641 F.2d 425, 429 (6th Cir. 1981), overruled on other grounds, United States v. Hardin, 539 F.3d 404, 411-12 (6th Cir. 2008).

Here, Mr. Jackson opened the motel room door to multiple armed officers who immediately arrested him and entered the room to search it. It is true that the BWC was obstructed at that point, whether on purpose or by accident. However, the audio portion of this video is clear, there is no request for consent to enter the room and/or search it. Regardless, given the coercive atmosphere, it appears nearly impossible to conceive that any statement of Mr. Jackson's at that moment was freely and voluntarily given.

Moreover, from the discovery provided, one simply cannot tell when and where Mr. Jackson made the alleged statement concerning his felon status, or as to the nature of the white

powder found during the search. Certainly, that information is discoverable, and Mr. Jackson demands strict proof as to when, where and under what conditions this alleged statement was made.[2] Regardless, Mr. Jackson moves this Court to suppress any and all of his statements as same are tainted by the illegality of the search of his hotel room. Out of an abundance of caution, he also challenges whether or not there was a Miranda violation and holds the government to its burden to show any statements made were knowing and voluntary.

## III. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court suppress all evidence obtained as a result of the unlawful entry and search of the hotel room, as well as any derivative evidence.

Respectfully submitted,

TYRONE J. PAYLOR
FEDERAL DEFENDER

s/ MARY C. JERMANN-ROBINSON
Assistant Federal Defender
200 Jefferson Avenue, Suite 200
Memphis, TN 38103
(901) 544-3895

CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing Motion to Suppress has been forwarded by electronic means via the Court's electronic filing system to Mr. William Bateman, Assistant U.S. Attorney, 167 N. Main, Suite 800, Memphis, TN 38103.

This the 30th day of April 2026.

s/ MARY C. JERMANN-ROBINSON, ESQ.
Assistant Federal Defender

[2] This information has been requested and AUSA Bateman has agreed to seek further information from his agents and has no objection to an extension of time for the defense to file pretrial motions. Should additional discovery be provided Mr. Jackson will move this Court to allow him to amend this motion.